UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| J. M.,<br><br>    Plaintiff,<br><br>    v.<br><br>LIBERTY UNION HIGH SCHOOL DISTRICT,<br><br>    Defendant. | Case No. 16-cv-05225-LB<br><br>**ORDER GRANTING THE DEFENDANT'S MOTION TO DISMISS**<br><br>Re: ECF No. 34 |

## INTRODUCTION

This case concerns the expulsion of J.M., a minor and former student at Liberty Union High School District.[1] J.M., who has ADHD, had "a verbal altercation with another student while playing an on-line video game" and, the next day, was "involved in a threatening confrontation with that same student on school grounds."[2] J.M. challenges here the District's determination that his altercation-related conduct was not a manifestation of his ADHD and asserts two substantive claims: (1) discrimination under section 504 of the Rehabilitation Act, *see* 29 U.S.C. § 794; and

---

[1] *See* First Amended Compl. – ECF No. 33. Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *See id.* ¶¶ 4, 12.

ORDER — No. 16-cv-05225-LB

1  (2) retaliation under section 504 of the Rehabilitation Act, *see id.*[3] He also seeks judicial review of the District's administrative hearing and determination.[4] The District moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).

The court can decide the matter without oral argument and so it vacated the hearing previously set for May 11, 2017. The court grants the motion and dismisses the complaint but grants leave to amend.

**STATEMENT**

**1. The District Develops a Section 504 Plan for J.M.**

J.M. is sixteen years old and has Attention Deficit Hyperactivity Disorder ("ADHD").[5] While in middle school (outside of the defendant's district), J.M. was provided with a section 504 Plan — a plan consisting of the "accommodations, supplementary aids, supports[,] and services" necessary to provide him with a free appropriate public education.[6] In 2014, when J.M. enrolled in the District's high school, the District "evaluated him and again found him eligible for a 504 Plan" because of his ADHD.[7]

The District's 504 Plan for J.M. "described the impact of [his] disability on his education," which was "limited to his poor attention and distractibility in the classroom, poor organization skills[,] and frequent failure to complete and turn in assignments and homework."[8] Under the Plan, J.M. received "class notes, preferential classroom seating, [and] enrollment in a tutorial support class."[9] The Plan also contained "similar provisions focusing solely on his timely production and completion of his academic work."[10]

---

[3] *Id.* ¶¶ 24–30.
[4] *Id.* ¶¶ 31–39.
[5] *Id.* ¶ 4.
[6] *Id.* ¶¶ 7, 10.
[7] *Id.* ¶ 10.
[8] *Id.* ¶ 11.
[9] *Id.*
[10] *Id.*

### 2. J.M. Is Involved in an Altercation; the District Conducts a Manifestation Determination; and J.M. Requests an Administrative Hearing

One night in January 2016, J.M. had "a verbal altercation with another student while playing an on-line video game."[11] The next day, he was "involved in a threatening confrontation with that same student on school grounds."[12] "J.M. was immediately suspended and [the District] moved to expel him."[13]

The District then completed a "comprehensive psycho-educational assessment of J.M."[14] The District's assessor considered whether J.M.'s conduct in the altercation "was caused by or had a direct and substantial relationship" to his ADHD.[15] The assessor found that it was not, and therefore his "conduct was not a manifestation" of his disability.[16] The assessor explained: "The conduct in question did not appear to be an act of impulsivity, [it] instead appeared to be an act organization [sic] and planning."[17] J.M.'s parents disagreed with the determination.[18]

To challenge the District's determination, J.M.'s parents requested a section 504 administrative hearing under the District's policies.[19] In that process, his parents obtained a copy of the District assessor's test protocols used in conducting J.M.'s assessment.[20] Those protocols revealed certain facts — including (among other things) J.M.'s "clinically significant" inability to independently generate ideas, responses, or problem-solving strategies; an inability to anticipate future events; a "severe" inability to consider the consequences of his own acts; and an "elevated" difficulty providing an appropriate emotional response — that J.M. asserts the assessor failed to

---

[11] *Id.* ¶ 12.
[12] *Id.*
[13] *Id.*
[14] *Id.* ¶ 13.
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.* ¶ 14.
[20] *Id.* ¶¶ 15–16.

consider.[21] The assessor instead "discussed only one symptom of ADHD — difficulty with organization and planning of tasks — and even then . . . failed to make a factual finding."[22]

J.M. submitted the above facts for the administrative hearing, which was held in May 2016.[23] At the hearing (and in his briefs), J.M. challenged the District's "failure to take any reasonable steps to locate [his] prior psycho-educational assessment from the prior school year."[24] He asserted that such failure violated his "procedural right to a manifestation determination based upon all relevant and necessary records and information."[25] But, following an evidentiary hearing, the hearing officer "upheld the D[istrict]'s determination that J.M.'s conduct was neither caused by nor had a direct and substantial relationship to J.M.'s disability and therefore was not a manifestation of his disability."[26] The hearing officer did not address or make any factual findings regarding J.M.'s procedural challenge.[27]

### 3. J.M. Sues the District

After the administrative hearing, J.M. sued the District.[28] In the initial complaint, J.M. sought judicial review of the hearing officer's decision under section 504 of the Rehabilitation Act.[29] The District moved to dismiss the complaint for lack of subject-matter jurisdiction.[30] J.M. did not dispute that this court lacked jurisdiction but requested leave to amend to "present the facts in a manner that will support a substantive claim of discrimination under Section 504 . . . and establish subject matter jurisdiction."[31] The court granted J.M. leave to amend the complaint.[32]

---

[21] *Id.* ¶¶ 16–17.
[22] *Id.* ¶ 17.
[23] *Id.* ¶ 18.
[24] *Id.* ¶ 21.
[25] *Id.*
[26] *Id.* ¶ 18.
[27] *Id.* ¶ 22.
[28] *See* Compl. – ECF No. 1.
[29] *See generally id.*
[30] *See* ECF No. 24.
[31] ECF No. 26 at 3–4.

J.M. did so and asserts two substantive Section 504 claims — one for discrimination and one for retaliation — and reasserts his request for review of the hearing officer's findings.[33] The District moves to dismiss the First Amended Complaint ("FAC") under Rule 12(b)(6).[34]

## RULE 12(B)(6) LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of a "failure to state a claim upon which relief can be granted." A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (internal citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, "'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

---

[32] Order – ECF No. 30.

[33] First Amended Compl. – ECF No. 33.

[34] Motion to Dismiss – ECF No. 34; Opposition – ECF No. 35; Reply – ECF No. 37.

unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'''" *Id.* (quoting *Twombly*, 550 U.S. at 557).

If a court dismisses a complaint, it should give leave to amend unless the "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## ANALYSIS

### 1. Section 504 Discrimination Claim

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). "Section 504 applies to all public schools that receive federal financial assistance." *Mark H. v. Lemahieu*, 513 F.3d 922, 929 (9th Cir. 2008).

To state a claim under section 504, a plaintiff must show: "(1) she is a qualified individual with a disability; (2) she was denied 'a reasonable accommodation that [she] needs in order to enjoy meaningful access to the benefits of public services;' and (3) the program providing the benefit receives federal financial assistance." *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1204 (9th Cir. 2016) (quoting *Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 2010)); *see also Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001). The plaintiff can satisfy the second prong "by showing that the program denied her meaningful access to public education . . . by violating a regulation that implements section 504's prohibitions." *A.G.*, 815 F.3d at 1204 (citing *Lemahieu*, 513 F.3d at 938–39). When asserting an implementing-regulation-based claim, the plaintiff must allege "precisely which § 504 regulations are at stake and why," or, "in what regard" the regulation was violated. *Lemahieu*, 513 F.3d at 925.

In the public-school context, section 504's implementing regulations require "schools to 'provide a free appropriate public education to each qualified handicapped person.'" *A.G.*, 815 F.3d at 1203 (quoting 34 C.F.R. § 104.33(a)). That free appropriate public education ("FAPE")

requires "regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met and (ii) are based upon adherence to procedures that satisfy the requirements of [34 C.F.R.] §§ 104.34, 104.35, and 104.36." 34 C.F.R. § 104.33(b)(1); *see also A.G.*, 815 F.3d at 1203.

**1.1 Private Right of Action**

J.M. asserts two implementing-regulation violations, both based in 34 C.F.R. § 104.36.

Whether a plaintiff can bring a claim under a specific implementing regulation depends on whether the regulation asserted "come[s] within the § 504 implied right of action." *Lemahieu*, 513 F.3d at 935; *see H. v. Mill Valley School Dist.*, No. 15-cv-05751-HSG, 2016 WL 3162174, at *4 (N.D. Cal. June 7, 2016). "For purposes of determining whether a particular regulation is ever enforceable through the implied right of action contained in a statute, the pertinent question is simply whether the regulation falls within the scope of the statute's prohibition." *Lemahieu*, 513 F.3d at 938. "[T]o be enforceable through the § 504 implied private right of action, regulations must be tightly enough linked to § 504 that they 'authoritatively construe' that statutory section, rather than impose new obligations." *Id.* at 939 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 284 (2001)). Section 504's "reasonable accommodation" and "meaningful access" requirements are relevant "when evaluating whether regulations 'come within § 504's substantive scope.'" *P.P. v. Compton Unified Sch. Dist.*, 135 F. Supp. 3d 1098, 1118 (C.D. Cal. 2015) (quoting *Lemahieu*, 513 F.3d at 938).

In *P.P. v. Compton Unified School District*, the court found that 34 C.F.R. § 104.36, "as invoked in [that] case, is 'a variety of meaningful access regulation,' such that it is encompassed within § 504's implied right of action." 135 F. Supp. 3d at 1119. There, the plaintiffs alleged that the school district failed to "established procedures regarding notice," which "resulted in negative consequences for class members who were entitled to the protection of procedural safeguards, including suspension, involuntary transfer, and expulsion." *Id.* (internal quotations omitted). Distinguishing cases that involved "no underlying discrimination claim" (and instead involved

only claims for violation of section 104.36's procedural provisions), the alleged consequences of the district's failure were "related to Plaintiffs' general theory of disability-based deprivation." *Id.* (distinguishing *Power ex. rel. Power v. Sch. Bd. of City of Virginia Beach*, 276 F. Supp. 2d 515, 519 (E.D. Va. 2003)). And so the plaintiffs could sue under § 104.36.

Here, as in *P.P.*, the court construes the complaint to invoke § 104.36 as "a variety of meaningful access regulation." The gravamen of J.M.'s complaint is that the District did not apply the correct standard (or provide a review process) to evaluate his documented ADHD-related symptoms before expelling him. As such (and liberally construed) the claim is not one attacking only section 104.36's procedural requirements, but one that involves a related, underlying discrimination claim.

### 1.2 Violation of the "Manifestation Determination" Regulations

J.M. asserts that the District violated section 504 and implementing regulation 34 C.F.R. § 104.36 by applying the incorrect "legal standing in making a manifestation determination."[35] He alleges that "the correct legal standard is not whether the student's behavior was caused by or had a direct and substantial relationship to his disability, the standard used by the D[istrict], but simply whether the behavior bears a relationship to the disability."[36]

34 C.F.R. § 104.36 requires public schools to establish a system of procedural safeguards "with respect to actions regarding the identification, evaluation, or educational placement of persons who, because of handicap, need or are believed to need special instruction or related services." That system must include "notice, an opportunity for the parents or guardian of the person to examine relevant records, an impartial hearing with opportunity for participation by the person's parents or guardian and representation by counsel, and a review procedure." *Id.* Compliance with the procedural safeguards of [the Individuals with Disabilities in Education Act ("IDEA")] is one means of meeting this requirement." *Id.*

---

[35] FAC ¶ 25.

[36] *Id.* ¶ 32.

The IDEA, designed "to ensure that all children with disabilities have available to them a free appropriate public education," *see Lamahieu*, 513 F.3d at 928 (quoting 20 U.S.C. § 1400(d)(1)(A)), provides for a manifestation-determination process. *See* 20 U.S.C. § 1415(k)(E); 34 C.F.R. 300.530(e). That process requires, before changing a child's placement, that the local educational agency, the parents, and the child's individualized-education-program ("IEP") team members "review all relevant information in the student's file, including the child's IEP, any teacher observations, and any relevant information provided by the parents," to determine:

> (I) if the conduct in question was caused by, or had a direct and substantial relationship to, the child's disability; or
>
> (II) if the conduct in question was the direct result of the local educational agency's failure to implement the IEP.

20 U.S.C. § 1415(k)(E)(i); 34 C.F.R. 300.530(e)(1). If the group determines that either of those two conditions is applicable to the child, "the conduct shall be determined to be a manifestation of the child's disability." 20 U.S.C. § 1415(k)(E)(ii); 34 C.F.R. 300.530(e)(2).

Here, the District's section 504 "Notice of Parent/Guardian Rights and Procedural Safeguards" contains a section titled "Discipline."[37] The manifestation-determination procedures therein incorporate and mirror the above IDEA process and standard.[38] For example, if the team determines that (1) "the conduct in question was caused by, or had a direct and substantial relationship to, the student's disability," or (2) "the conduct in question was the direct result of [the] District's failure to implement the student's current Section 504 Service Plan," then "the alleged misconduct shall be determined to be a manifestation of the student's disability."[39] J.M. concedes as much in his opposition.[40]

---

[37] Request for Judicial Notice – ECF No. 25, Ex. B at 23. The court considers this document — referenced in the complaint — under the incorporation-by-reference doctrine. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

[38] *Id.*

[39] *Id.*

[40] Opposition at 5.

But J.M. asserts that "[b]y making a manifestation determination that failed to include the findings required by" 34 C.F.R. § 300.523(c)(2)(ii) and (iii), which "requires more specific findings," the District violated § 104.36 and thus gives rise to his claim for discrimination.[41]

There are two problems. First, the regulation that J.M. points to (§ 300.523(c)) appears to be an old, repealed IDEA regulation. *See* 34 C.F.R.§ 300.530 (effective Oct. 13, 2006); *id.* § 300.523 (effective to Oct. 12, 2006). It is not clear how the District's failure to comply with that section could constitute a violation of § 104.36. The District's policy instead mirrors the IDEA's current process and standard. Second, in any event, § 104.36 says only that "[c]ompliance with the procedural safeguards of [IDEA] is *one* means of meeting this requirement"— *i.e.*, IDEA compliance is sufficient, but not necessary. *See Lemahieu*, 513 F.3d at 933. So J.M.'s assertion that the District did not comply with an (old) IDEA regulation is not alone sufficient to state a claim.

Because J.M.'s manifestation-determination claim is based solely on the District's failure to apply the correct legal standard (and not, for example, its failure to properly apply it), the court's analysis stops here. The court does not reach the issue of whether the District properly applied the legal standard or whether it's failure to do so constituted "intentional discrimination." The court dismisses the claim without prejudice.

### 1.3 Violation of the "Review Procedure" Regulations

J.M. asserts that the District violated § 104.36 by failing "to provide [him] with a clear and understandable 'review procedure.'"[42]

The District's Section 504 "Notice of Parent/Guardian Rights and Procedural Safeguards" provides "procedural safeguards" involving a three-step process.[43] Under those procedures, if a parent or guardian disagrees with the "decisions regarding the identification, evaluation, or

---

[41] *Id.*

[42] FAC ¶ 26.

[43] *See* Request for Judicial Notice – ECF No. 25, Ex. B at 24–25.

educational placement" of his or her child, the parent or guardian may initiate one of two processes.[44]

First, at "level one," the parent or guardian may submit a written disagreement and request for a meeting with the "District Section 504 Administrator / Director of Special Services."[45] (The parent or guardian may skip level one altogether.[46]) Second, at "level two," "[i]f the disagreement is not resolved," the parent or guardian may request a due-process hearing to "be presided over and decided by an impartial hearing officer."[47] The District's section 504 Notice contains approximately a page and a half of procedures discribing the level two due-process hearing.[48] Finally, the Notice states, "[e]ither party may seek review of the hearing officer's decision by timely filing with a court of competent jurisdiction."[49] The District points out that the "court of competent jurisdiction" in this case would be the California superior court.[50] *See* Cal. Civ. P. Code § 1094.5; *Leone v. Medical Bd.*, 22 Cal. 4th 660, 663 (2000) ("The superior court has original jurisdiction of these administrative mandate proceedings.").

It is this last level of "review" that J.M. appears to take issue with. The court does not now decide whether California Civil Procedure Code section 1094.5 provides the proper avenue for review. J.M. does not plausibly plead a theory (factual or legal) about (1) how the District's review procedure was unclear and thus discriminatory, or (2) why the final, judicial level of review "cannot be considered to have 'provided' a review procedure to claimants, as required by the regulation."[51] The court therefore dismisses J.M.'s "review procedure" claim without prejudice.

---

[44] *Id.*

[45] *Id.* at 24.

[46] *Id.*

[47] *Id.*

[48] *See id.* at 24–25.

[49] *Id.* at 25.

[50] Motion at 11–12; Reply at 5–6.

[51] Opposition at 6.

**2. Section 504 Retaliation Claim**

J.M. asserts a section 504 retaliation claim based on the District's failure to send his personal file to his new school in response to his parents' "advocacy."[52]

To state a claim for retaliation under section 504, a plaintiff must show: (1) involvement in a protected activity, (2) an adverse action, and (3) a causal link between the two. *See Henry v. Napa Valley Unified*, No. 16-cv-04021-MEJ, 2016 U.S. Dist. LEXIS 170152, at *12 (N.D. Cal. Dec. 8, 2016) (citing *Kitchen v. Lodi Unified Sch. Dist.*, 2014 WL 5817320, at *4 (E.D. Cal. Nov. 5, 2014)); *see also Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir. 2002).

Here, J.M. alleges that while "awaiting hearing and still on suspension," his parents withdrew him from his District school and enrolled him in a private school.[53] Since his enrollment, J.M.'s parents and his new school requested "numerous times" that the District send his educational file to the new school.[54] But, to date, the District "has refused to comply with these requests and has failed to identify any reason for that refusal."[55] In fact, the District "has not communicated with [his] parents at all regarding their request for transmittal of [his] file."[56] And so J.M. alleges that the District's actions "are retaliatory against J.M. for his parents' advocacy on behalf of their son and their pursuit of claims against the D[istrict] under Section 504."[57]

The District says it concedes (for the current motion) that J.M.'s parents "engaged in protected activity by advocating on behalf of their son."[58] But the District later argues, in connection with its "causal connection" challenge, that J.M. "does not specifically identify the activity that his parents engaged in that the District allegedly retaliated against."[59] Indeed, the court thinks, it is necessary to first identify the alleged "protected activity."

---

[52] FAC ¶¶ 28–30.

[53] *Id.* ¶ 29.

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *Id.*

[58] Motion at 13.

[59] *Id.* at 14.

ORDER — No. 16-cv-05225-LB         12

And it is because J.M. fails to adequately identify that activity that the claim as pled fails. He asserts that the District withheld his file in retaliation for his parents' "advocacy." But the term "advocacy" is ambiguous in the context of the complaint. Does J.M. allege that the District withheld his file because of his parents' advocacy during his manifestation determination? Because they challenged the result of that determination? Because they enrolled him in a private school? Because they filed this lawsuit? The FAC is not clear: it could be one such instance of advocacy; it could all.

The clarity is important because the FAC must contain enough facts to state a plausible claim and provide sufficient notice of that claim for the District to respond. It is also important because it affects at least two elements of the claim — (1) whether his parents were in fact engaged in "protected activity" and (2) whether there was a causal connection between that activity and the District's alleged retaliation. For example, regarding causation, the time between the activity and retaliation may be illuminating, and that analysis may change depending on what the alleged "activity" is here. *See, e.g.*, *Alex G. ex rel. Dr. Steven G. v. Bd. of Trs. of Davis Joint Unified Sch. Dist.*, 387 F. Supp. 2d 1119, 1129 (E.D. Cal. 2005) ("Courts have generally held that causation can be inferred from timing alone where the adverse action follows closely on the heels of the protected activity") (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (stating "that the temporal proximity must be 'very close'")).

The court therefore dismisses the claim without prejudice.

### 3. Claim for Review of the Hearing Officer's Decision

J.M.'s third claim requests judicial review of the hearing officer's findings.[60] The District previously moved to dismiss this claim (it was the sole claim in J.M.'s original complaint) for lack of subject-matter jurisdiction.[61] J.M. did not dispute that this court lacks subject-matter jurisdiction

---

[60] FAC ¶¶ 31–39; Prayer ¶ 2.

[61] *See* Compl. – ECF No. 1; ECF No. 24.

to hear an appeal from the hearing officer's administrative proceeding.[62] The court therefore dismissed the complaint but allowed J.M. to amend his complaint.[63]

J.M.'s new administrative-review claim is nearly identical but hooks it to the above, substantive section 504 claims and asks the court to exercise "supplemental jurisdiction over this claim as a state claim."[64]

The court dismisses the claim. To the extent J.M. can raise this as a state-law claim under the court's supplemental jurisdiction, the court declines to exercise such jurisdiction at this time. Although courts may exercise supplemental jurisdiction over state law claims "that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy," 28 U.S.C. § 1367(a), a court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction," *id.* § 1367(c)(3). Indeed, unless "considerations of judicial economy, convenience[,] and fairness to litigants" weigh in favor of exercising supplemental jurisdiction, "a federal court should hesitate to exercise jurisdiction over state claims." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims."), *superseded on other grounds by statute as recognized in Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 557 (10th Cir. 2000).

Here, J.M. asserts federal-question jurisdiction based on his substantive section 504 claims. But the court dismisses those claims, and, although the court grants leave to amend, it is not clear that they will support supplemental jurisdiction. The court accordingly declines to exercise supplemental jurisdiction over J.M.'s "state-law claim" for review of the hearing officer's decision

---

[62] *See* ECF No. 26.

[63] Order – ECF No. 30.

[64] FAC ¶ 39.

and dismisses that claim without prejudice. If he amends this claim (for the second time), he should carefully delineate this court's jurisdiction.

## CONCLUSION

The court grants the District's motion to dismiss. J.M. may amend his complaint within 14 days from the date of this order.

**IT IS SO ORDERED.**

Dated: May 16, 2017

_____
LAUREL BEELER
United States Magistrate Judge